UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
FRANKFORT

GEORGE PUREFIDE,                          )
                                          )
         Plaintiffs,                      )            Civil No. 13-66-GFVT
                                          )
v.                                        )       **MEMORANDUM OPINION**
                                          )                **&**
LADONNA THOMPSON, et al.,                 )              **ORDER**
                                          )
         Defendants.                      )
                                          )

*** *** *** ***

George Purefide believes that the medical treatment he has received as an inmate of the

Luther Luckett Correctional Complex is so bad that it constitutes cruel and unusual punishment

under the Eighth Amendment to the United States Constitution.  As a result, he filed a *pro se*

"Petition for Declaration of Inmate Rights" asking the Franklin Circuit Court to order the

defendants to provide him with the treatment that he needs.  [R. 1-3].  After properly removing

the case to this Court, Defendants Ladonna Thompson, Commissioner of the Kentucky

Department of Corrections, and Greg Howard, Warden of the Luther Luckett Correctional

Complex, moved to dismiss the claims against them because the petition does not allege that they

did anything wrong.  [R. 4].  Defendants Nurse Kristy Mullins, Dr. Don Stephens, Nurse Sonya

Burrus, and Nurse Anne Jones claim that summary judgment in their favor is appropriate

because they were not deliberately indifferent to Purefide's medical needs as shown by the

treatment they provided.  [R. 7].  For the reasons that follow, the Court shall **GRANT** the

Defendants' motions and **DISMISS** Purefide's petition.

Petitioner George Purefide is an inmate at the Luther Luckett Correctional Complex in LaGrange, Kentucky. [R. 1-3 at 9-10]. Defendant Ladonna Thompson is the Commissioner of the Kentucky Department of Corrections and Defendant Greg Howard is the Warden of the Luther Luckett Correctional Complex. [R. 1-3 at 10]. The Department of Corrections contracts with CorrectCare-Integrated Health, Inc., to provide medical personnel at Luther Luckett. [R. 7-1 at 1]. Defendants Nurse Kristy Mullins, Dr. Don Stephens, Nurse Sonya Burrus, and Nurse Anne Jones, were all employees of CorrectCare and treated Purefide during his incarceration at Luther Luckett. [*Id.*]

According to Purefide's Petition, at the time he arrived at Luther Luckett he was experiencing problems with his feet and one of his eyes. [R. 1-3 at 9]. He indicates that he has sought treatment for these problems over the course of his incarceration, but the medical care he received was inadequate. [*Id.*] Concerning his feet, Purefide acknowledges that he was treated with an antibiotic injection, a pill, and "foot soaks." [R. 1-3 at 8]. However, he claims that, as a result of Nurse Burrus's actions in October 2012, he did not have access to his medication, was required to purchase medication at the canteen, and was turned away from further treatment. [R. 1-3 at 8-9]. This appears to have been the subject of a grievance filed with the facility. [R. 1-3 at 31]. He also claims that in August 2013, Dr. Jones failed to see him and instead he was only able to see Nurse Carver who simply ordered more "foot soaks." [R. 1-3 at 15].

Concerning his eye, Purefide provides a grievance form dated July 1, 2013, in which he notes that the eye drops he had been prescribed for pink eye had not been effective and his eye felt worse. [R. 1-3 at 21]. He sought an appointment with an eye doctor, which he received on

July 5, 2013.  [R. 1-3 at 21, 26-27].  Purefide claims that the eye doctor indicated that he had cataracts, but did not provide treatment to improve his situation and Purefide received no further treatment at the facility. [R. 1-3 at 9, 27].  Purefide indicates that he returned to the eye doctor on July 31 and was told to keep hot towels compressed to his eyes, but this did not cure his ailment either.  [R. 1-3 at 9, 26].

According to Purefide, he has been "forced to endure intense discomfort because his plea for medical assistance when unheeded by the Respondent, Dr. Stevens, Dr. A. Jones, as well as the Nurses of the L.L.C.C. Medical Staff."  [R. 1-3 at 16].  As a result, Purefide has filed the Petition presently before the Court claiming that the Defendants provided him inadequate healthcare in violation of the Eight Amendment to the United States Constitution.[1]

## II

### A

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Ladonna Thompson and Greg Howard move to dismiss Purefide's claims against them.  Purefide has not responded to the Defendants' motion to dismiss.[2]  When a plaintiff "fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion."  *Scott v. Tennessee*, 878 F.2d 382, 1989 WL 72470, at *2 (6th Cir. 1989) (unpublished table decision); *see also Humphrey v. U.S. Attorney General's Office*, 279 Fed.

---

[1] There is some ambiguity from Purefide's petition as to the true nature of his claim.  It is clear that he is seeking a declaration that the Defendants have engaged in conduct made unconstitutional under the Eighth Amendment.  Because Purefide is asserting his action directly on the Constitution, the Court shall construe it as a claim made under 42 U.S.C § 1983.

[2] Purefide did not respond to either the motion to dismiss or the motion for summary judgment.  However, he does remain aware that the case is active before this Court as he recently filed a Petition for Writ of Mandamus in this Court requesting a ruling on his Petition. [R. 8].

Appx. 328, 331 (6th Cir. 2008) (finding that a plaintiff's failure to oppose arguments raised in defendants' motion to dismiss is grounds for the district court to assume that opposition to the motion is waived); *Wesley v. Rigney*, 913 F. Supp. 2d 313, 330 (E.D. Ky. 2012) (dismissing plaintiff's claim when plaintiff waived opposition to defendant's motion to dismiss by failing to respond to arguments raised in the motion). By failing to respond to or to otherwise controvert the defendants' Motion to Dismiss, and by failing to timely seek an extension of time in which to do so, Purefide has waived any objection he might have had to the defendants' motion.

However, when granting a motion will result in the outright dismissal of an action, the Court should exercise some caution to at least ensure that the moving party has met its burden under the Federal Rules. *See, e.g., Carver v. Bunch*, 946 F.2d 451, 453-54 (6th Cir. 1991) (finding that plaintiff's failure to respond to defendants' motion to dismiss, "standing alone," did not amount to a failure to prosecute and accordingly concluded that district court erred in dismissing plaintiff's complaint based solely on the failure to respond). In this case, the Defendants' motion rightly shows that Purefide has failed to state a claim against Thompson and Howard such that dismissal is also substantively appropriate under Federal Rule of Civil Procedure 12(b)(6).[3]

Rule 12(b)(6) allows a defendant to seek dismissal of a complaint which fails to state a claim upon with relief can be granted. Fed.R.Civ.P. 12(b)(6). In reviewing a Rule 12(b)(6)

---

[3] Courts liberally construe the pleadings of *pro se* claimants and hold their petitions to a less stringent standard than similar pleadings drafted by attorneys. *Hahn v. Star Bank,* 190 F.3d 708, 715 (6th Cir.1999) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)). However, Even *pro se* plaintiffs must allege sufficient facts to state a plausible claim in order to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Garrett v. Belmon Co. Sheriff's Dept.,* No. 08–3978, 2010 WL 1252923, at *2 (6th Cir. April 1, 2010); *Nat'l Bus. Devel. Serv., Inc. v. American Credit Educ. and Consulting, Inc.,* 299 F. App'x 509, 511 (6th Cir. October 31, 2008); *Zibbell v. Michigan Dept. of Human Servs.,* 313 F. App'x 843, 846 (6th Cir. February 23, 2009).

motion, the Court "accept[s] all the Plaintiffs' factual allegations as true and construe[s] the complaint in the light most favorable to the Plaintiffs." *Hill v. Blue Cross & Blue Shield of Mich.,* 409 F.3d 710, 716 (6th Cir. 2005). For a claim to be viable, the complaint must, at a minimum, "give the defendant fair notice of what the ... claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). Further, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 570). "[A] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

Purefide's petition makes only two mentions of Thompson and Howard. One is in the heading of the case and the second is in the section labeled "Parties." From those two references, the petition indicates the positions of these defendants and where they are located, but fails to produce a single fact that could put Thompson and Howard on notice of what they have done wrong, let alone give rise to a plausible conclusion that they were deliberately indifferent to Purefide's medical care.

Even if Thompson and Howard were potentially supervising the health care providers – a fact that is not at all obvious from the petition – is not enough to save Purefide's claims against them. Eighth Amendment claims are actionable under 42 U.S.C. § 1983. "Liability under §1983 cannot be based on the doctrine of *respondeat superior.*" *Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir.1999). Purefide must allege that Thompson and Howard "did more than play a passive

role in the alleged violation or showed mere tacit approval of the goings on." *Bass v. Robinson,* 167 F.3d 1041, 1048 (6th Cir.1999) (citations omitted). Instead, he must show that they "either encouraged the specific incident of misconduct or in some other way directly participated in it." *Loy v. Sexton*, 132 F. App'x 624, 626 (6th Cir. 2005) (*Shehee,* 199 F.3d at 300). Since Purefide has failed to allege any facts that plausibly make this showing, any claims against Thompson and Howard shall be dismissed.

B

The CorrectCare Defendants move separately for judgment as a matter of law on the claims against them for inadequate care under the Eighth Amendment. Once again, Purefide failed to provide a timely response or objection to the arguments made in their motion for summary judgment, and so, as previously discussed, Purefide has waived any objection he might have had to the defendants' motion. However, reviewing the arguments advanced by the CorrectCare Defendants and the supporting evidence that they have provided, the Court also finds that their motion for summary judgment should be granted on the merits as well.

Under Rule 56, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. A fact's materiality is determined by the substantive law, and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 587 (1986). The burden is initially on the moving party to inform "the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of a material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may make this showing by demonstrating the absence of evidence to support one of the essential elements of the nonmoving party's claim. *Id*. at 322-25. Once this burden is met, the nonmoving party, "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56. Further, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co*., 886 F.2d 1472, 1479-80 (6th Cir. 1989). Instead, "the non-moving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

In order to maintain a claim for inadequate medical care under the Eight Amendment, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to the plaintiff's serious medical needs." *Haynes v. Martin*, CIV.A. 6:12-210-DCR, 2014 WL 1159932 at *6 (E.D. Ky. Mar. 21, 2014) (citing *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). "The test to determine whether [a defendant] acted with 'deliberate indifference' has an objective and subjective component." *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001). The objective component requires the existence of a "sufficiently serious medical need." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004). The subjective component requires a plaintiff to show that "the official [knew] of and disregard[ed] an excessive risk to inmate health

or safety, which is to say the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Clark-Murphy v. Foreback*, 439 F.3d 280, 286 (6th Cir. 2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970 (1994)) (internal quotation marks omitted). The purpose of the subjective requirement of this test is "to prevent the constitutionalization of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment." *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 446-47 (6th Cir. 2014) (quoting *Comstock v. McCrary,* 273 F.3d 693, 703 (6th Cir.2001)). On this point, the Sixth Circuit recently stated as follows:

> Although medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference, the fact that alternative procedures might have better addressed a prisoner's particular needs does not show that the County was deliberately indifferent to his medical needs. Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.

*Arflack v. Cnty. of Henderson, Kentucky*, 412 F. App'x 829, 832 (6th Cir. 2011) (internal citations and quotation marks omitted).

The CorrectCare Defendants obtained certified copies of Purefide's medical records by subpoena and have provided a detailed overview of them and tendered them into the record. These records show that Purefide received a significant amount of treatment for his feet and eye. Concerning his feet, the medical records show that Purefide suffered at various times from ingrown toenails, fungal infections, tinea pedis, pseudomonas bacteria, swelling, maceration, and diabetic neuropathy pain. [R. 7-2 at 2, 17, 21-22, 43, 48-55, 64, 74-76, 84, 112, 152]. The records also show that the CorrectCare defendants provided treatment for these concerns.

Purefide's ingrown toenails were initially treated with a soak in Epsom salts [R. 7-2 at 10], and when they did not improve, two of his toenails were surgically removed. [R. 7-2 at 16]. For his other foot issues, the CorrectCare Defendants have, over the course of Purefide's incarceration, provided him with Domeboro and Dakins solutions to soak his feet, ointments, oral antibiotics, antibiotic injections, ibuprofen, two pair of diabetic shoes, diabetic hose, oral antifungal medications, and antifungal creams. [R. 7-2 at 13-16, 18, 24, 25, 29-30, 34-42, 56, 60, 65, 60-73, 74-76, 79-80, 84, 89-90, 112, 146-50, 153-159].

During the time periods specifically referenced by Purefide in his Petition – September 24, 2012 to October 24, 2012 – the medical records indicate that he had been taking the antibiotic Cipro and was prescribed Ceftriaxone antibiotic injections, Levaquin oral antibiotic, Dakins foot soaks, Nystatin antifungal power, and Diflucan oral anti-fungal medication. [R. 7-2 at 56-63]. It is true that, on at least one occasion, Nurse Mahoney advised him to purchase some antifungal cream from the canteen to put between his toes, but it appears that most of these medicines were provided to him. Indeed, the medical records suggest that the greater problem was not Purefide's access to the prescribed medications, but his compliance with the recommended treatment. On numerous occasions, the medical records show that Purefide was not compliant in receiving treatment or taking his medications. [R. 7-2 at 29-31, 57-58, 61-63, 77, 90, 94, 144, 146-150, 153]. Nonetheless, several records, including those from as late as July 2013, note that the treatment plan, when followed, was effective in treating Purefide's ailing feet. [R. 7-2 at 115, 65].

Concerning Purifide's eye, his medical records indicate that he experienced itchiness, redness, conjunctivitis, and miebomian gland dysfunction. [R. 7-2 at 121-22, 126]. Contrary to

Purefide's representations, there is no information in the record to indicate that Purefide had been diagnosed with a cataract. When Purefide initially complained of eye issues, Nurse McCoy and Nurse Jones prescribed him antibiotic eye drops. [R. 7-2 at 121-22]. Before he had received the eye drops he placed another sick call regarding his eyes. [R. 7-2 at 125]. Once the eye drops arrived, he placed yet another sick call to note that they were ineffective and filed the grievance requesting that he be sent to an eye doctor. [R. 7-2 at 125; R. 1-3 at 21]. On July 5, 2013, Purefide was transported to the KSR eye clinic, where the eye doctor prescribed him hot towel compresses, flax seed oil, and artificial tears. [R. 72 at 126]. He completed a sick call slip on July 10, complaining of continued eye problems. [R. 7-2 at 127]. On July 15, Nurse Bohr assessed Purefide and consulted with Nurse Mullins, both of whom agreed that Purefide should continue with the treatment prescribed by the eye doctor. [R. 7-2 at134-135]. When he returned to the eye clinic on July 30, the eye doctor found no changes with Purefide's eye and noted that he had not been compliant with the previously prescribed treatment. [R. 7-2 at 137].

The Court does not intend to minimize the severity of Purefide's infirmities or the discomfort that he feels. However, even assuming that he does have a sufficiently serious medical need, there is no dispute of fact on this record that the CorrectCare Defendants did not "[know] of and disregard[] an excessive risk to [Purefide's] health or safety," *Clark-Murphy*, 439 F.3d at 286 (quoting *Farmer*, 511 U.S. at 837). On the contrary, Purefide's medical records are replete with treatments and interventions employed by the CorrectCare Defendants to care for his eye and feet. In fact, Purefide's own Petition acknowledges that he received treatment. His quarrel appears to actually be that he has not received the type of treatment that he wants. However, Purefide's "disagreement with the exhaustive testing and treatment he received while

incarcerated does not constitute an Eighth Amendment violation." *Lyons v. Brandly*, 430 F. App'x 377, 380-81 (6th Cir. 2011) (citing *Estelle,* 429 U.S. at 107); *See also Livingston v. Everson*, 11-CV-414-JMH, 2012 WL 3613292 at *4 (E.D. Ky. Aug. 21, 2012) (noting that "it is well-established that a prisoner cannot show deliberate indifference where he or she is being provided with medical treatment, but the prisoner disagrees with a doctor's reasonable medical judgment regarding the most appropriate course of treatment: a mere difference of opinion concerning the best treatment plan does not indicate deliberate indifference."); *Haynes v. Martin*, CIV.A. 6:12-210-DCR, 2014 WL 1159932 (E.D. Ky. Mar. 21, 2014); *Gonzalez-Valasquez v. Growse*, 5:11-CV-214-KKC, 2012 WL 3265997 (E.D. Ky. Aug. 9, 2012); *Sharpe v. Patton,* No. 08–cv–58–HRW, 2010 WL 227702, at *10 (E.D.Ky. Jan. 19, 2010).  As another court in this district stated:

> While it appears that the plaintiff has not gotten what he wants, what he wants is not the issue. Ordering a specific type of surgery is not the appropriate function of this Court ... at most the plaintiff has alleged a difference in opinion between the plaintiff and his health care providers regarding the expediency of a specific treatment. This does not generally create a constitutional claim.

*Alexander v. Federal Bureau of Prisons,* 227 F.Supp.2d 657, 666 (E.D.Ky.2002).  Therefore, the record does not show that the CorrectCare Defendants were deliberately indifferent to Purefide's medical concerns, and the motion for summary judgment on Purefide's Eighth Amendment claims shall be granted.

### III

Accordingly, and for the aforementioned reasons, it is hereby **ORDERED** as follows:

(1)    The Defendants' Motion for Extension of Time [R. 3] is **GRANTED**;

(2)    The Defendants' Motion to Dismiss [R. 4] is **GRANTED**;

(3)     The Defendants' Motion for Summary Judgment [R. 7] is **GRANTED**;

(4)     George Purefide's Petition for Declaration of An Inmate Rights [R. 1-3] is

**DISMISSED;**

(5)     George Purefide's Petition for Writ of Mandamus [R. 8] is **DENIED**, as moot;

(6)     **JUDGMENT** in favor of the Defendants will be entered contemporaneously

herewith and this matter will be **STRICKEN** from the Court's active docket.

This 18th Day of September, 2014.

**Signed By:**

*Gregory F. Van Tatenhove*

**United States District Judge**